## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| DAVID WRIGHT, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, |  |
| v. | **DEMAND FOR JURY TRIAL** |
| VITAS HEALTHCARE CORPORATION d/b/a VITAS HOSPICE SERVICES, LLC, |  |
| Defendants. |  |

## CLASS ACTION COMPLAINT

David Wright ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant VITAS Healthcare Corporation d/b/a VITAS Hospice Services, LLC ("VITAS" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## INTRODUCTION

1. This class action arises from VITAS's failure to protect highly sensitive data.

2. VITAS is a provider of end-of-life care based in Florida with locations across 15 states.[1]

3. As such, VITAS stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") about its current and former employees and patients. But VITAS lost control over that data when

---

[1] About Us, VITAS, https://www.vitas.com/about-us (last visited December 1, 2025).

cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.     According to Defendant's Breach Notice, on or about October 24, 2025, Defendant "discovered that an unauthorized party had compromised the account of one of our vendors and used that account to gain access to some of our systems."[2] A copy of Defendant's Breach Notice is attached as Exhibit A.

5.     Defendant's investigation revealed that "the unauthorized party accessed certain VITAS systems between approximately September 21 and October 27, 2025."[3]

6.     In other words, VITAS had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' and patients' Private Information for over five weeks.

7.     On information and belief, this information included names, addresses, Social Security numbers, driver's license numbers, medical information, health insurance information, and dates of birth.[4]

8.     On information and belief, cybercriminals were able to breach VITAS's systems because VITAS failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, VITAS's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

---

[2] Breach Notice, California Office of Attorney General, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://oag.ca.gov/system/files/Vitas%20Notice%20of%20Breach%20Sample%20Letters.pdf (last visited December 1, 2025).
[3] *Id.*
[4] Data Security Breach Reports, Attorney General of Texas, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited December 1, 2025).

9.      Plaintiff is a former employee of VITAS and a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by VITAS's misconduct.

10.     The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Defendant's current and former employees' and patients' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

11.     Plaintiff, David Wright, is a natural person and citizen of Missouri. He resides in Arnold, Missouri where he intends to remain.

12.     Defendant, VITAS Healthcare Corporation d/b/a VITAS Hospice Services, LLC is a Delaware company with its principal place of business at 200 Biscayne Blvd., Suite 400, Miami, FL 33131.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and Plaintiff are citizens of different states. And there are over 100 putative Class members.

14.     This Court has personal jurisdiction over Defendant because it is headquartered in Florida, regularly conducts business in Florida, and has sufficient minimum contacts in Florida.

15.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *VITAS Collected and Stored the Private Information of Plaintiff and the Class*

16.     VITAS is a provider of end-of-life care based in Florida with locations across 15 states.[5]

17.     As part of its business, VITAS receives and maintains the Private Information of tens of thousands of its current and former employees and patients.

18.     In collecting and maintaining the Private Information, VITAS agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Private Information.

19.     Under state and federal law, businesses like VITAS have duties to protect their current and former employees' and patients' Private Information and to notify them about breaches.

20.     VITAS recognizes these duties, declaring in its "Electronic Privacy Policy" that:

    a.     "Vitas takes reasonable industry standard precautions to keep the Site, its systems, and our services secure and to prevent Personal Information from being made available to unauthorized persons or entities;" and

    b.     "When Personal Information (such as name, email and phone number) is transmitted to Vitas, it is protected through the use of encryption, such as the Secure Socket Layer (SSL) protocol."[6]

### *VITAS's Data Breach*

21.     On or about October 24, 2025, Defendant "discovered that an unauthorized party

---

[5] About Us, VITAS, https://www.vitas.com/about-us (last visited December 1, 2025).
[6] Privacy Policy, VITAS, https://www.vitas.com/help-center/privacy-and-disclaimers/privacy-policy (last visited December 1, 2025).

had compromised the account of one of [its] vendors and used that account to gain access to some of [its] system."[7]

22.     Defendant's investigation revealed that the unauthorized third party "accessed certain VITAS systems between approximately September 21 and October 27, 2025."[8] Thus, cybercriminals had access to Defendant's systems and the Private Information stored therein for over five weeks.

23.     Concerningly, Defendant admitted that "the unauthorized party was able to access and download personal information about some of our patients and former patients."[9]

24.     Thus, cybercriminals not only accessed and viewed Private Information of Defendant's current and former employees and patients, but they also exfiltrated the Private Information.[10]

25.     On information and belief, this information included names, addresses, Social Security numbers, driver's license numbers, medical information, health insurance information, and dates of birth.[11]

26.     And yet, VITAS waited until November 21, 2025, before it began notifying the class—more than a month after it discovered the Data Breach.

27.     Thus, VITAS kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

---

[7] Breach Notice, California Office of Attorney General, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://oag.ca.gov/system/files/Vitas%20Notice%20of%20Breach%20Sample%20Letters.pdf (last visited December 1, 2025).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Data Security Breach Reports, Attorney General of Texas, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited December 1, 2025).

28.     And when VITAS did notify Plaintiff and the Class of the Data Breach, VITAS acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, encouraging Plaintiff and the Class to sign up for credit monitoring services.[12]

29.     VITAS failed its duties when its inadequate security practices caused the Data Breach. In other words, VITAS's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, VITAS caused widespread injury and monetary damages.

30.     On information and belief, VITAS failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

31.     VITAS has done little to remedy its Data Breach. VITAS has offered victims credit monitoring and identity related services. However, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that VITAS inflicted upon them.

32.     Because of VITAS's Data Breach, the Private Information of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

33.     And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[13]

---

[12] Breach Notice, California Office of Attorney General, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://oag.ca.gov/system/files/Vitas%20Notice%20of%20Breach%20Sample%20Letters.pdf (last visited December 1, 2025).
[13] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

34.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

35.     Thus, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff David Wright's Experiences and Injuries***

36.     Plaintiff Wright is a former employee of VITAS.

37.     As a condition of receiving employment with Defendant, Plaintiff provided Defendant with his Private Information and allowed Defendant to maintain his Private Information. Defendant used his Private Information to facilitate its business and provision of employment.

38.     Thus, Defendant obtained and maintained Plaintiff's Private Information.

39.     As a result, Plaintiff was injured by Defendant's Data Breach.

40.     Thus, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

41.     Plaintiff would not have provided his Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its employees' and patients' personal and health information from theft, and that those systems were subject to a data breach.

42.     Plaintiff trusted the company would use reasonable measures to protect his Private

Information according to Defendant's internal policies, as well as state and federal law. VITAS obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

43.      Plaintiff reasonably understood that a portion of the funds derived from his employment would be used to pay for adequate cybersecurity and protection of his Private Information.

44.      Through its Data Breach, VITAS compromised Plaintiff's Private Information, including but not limited to his name, Social Security number, address, date of birth, driver's license numbers, medical information, and health insurance information.

45.      Plaintiff fears for the security of his Private Information and worries about what information was exposed in the Data Breach.

46.      As a result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, contacting counsel, and reviewing financial accounts for any indications of actual or attempted identity theft or fraud. Plaintiff has spent time dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

47.      Because of VITAS's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

48.      Plaintiff suffered actual injury from the exposure and theft of his Private Information—which violates his rights to privacy.

49.      Plaintiff suffered actual injury in the form of damages to and diminution in the value

8

of his personal and health information – a form of intangible property that Plaintiff entrusted to Defendant for employment purposes which was compromised in, and as a result of, the Data Breach.

50.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and medical identity theft—all because VITAS's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

51.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

52.    Today, Plaintiff has a continuing interest in ensuring that his Private Information— which, upon information and belief, remains backed up in VITAS's possession—is protected and safeguarded from additional breaches. This interest is particularly acute, as Defendant's systems have already been shown to be susceptible to compromise and are subject to further attack so long as VITAS fails to undertake the necessary and appropriate security and training measures to protect its employees' Private Information.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

53.    Because of VITAS's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

        a.    loss of the opportunity to control how their Private Information is used;

        b.    diminution in value of their Private Information;

        c.    compromise and continuing publication of their Private Information;

        d.    out-of-pocket costs from trying to prevent, detect, and recovery from

        identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.      delay in receipt of tax refund monies;

g.      unauthorized use of their stolen Private Information; and

h.      continued risk to their Private Information—which remains in VITAS's possession—and is thus as risk for futures breaches so long as VITAS fails to take appropriate measures to protect the Private Information.

54.    Stolen Private Information is one of the most valuable commodities on the criminal information black market.

55.    According to the National Association of Healthcare Access Management, "[p]ersonal medical data is said to be more than ten times as valuable as credit card information. PHI has such a high value because it contains highly sensitive information, such as social security numbers, birth dates, addresses, credit card numbers, telephone numbers and medical conditions. This data is incredibly valuable on the black market because, unlike a stolen credit card that can be easily canceled, most people are unaware that their medical information has been stolen."[14]

56.    According to Advent Health University, when an electronic health record "lands in the hands of nefarious persons the results can range from fraud to identity theft to extortion. In fact, these records provide such valuable information that hackers can sell a single stolen medical

---

[14] https://www.naham.org/page/ConnectionsThe-Value-of-Personal-Medical-Information#:~:text=Personal%20medical%20data%20is%20said,telephone%20numbers%20and%20medical%20conditions, (last visited December 1, 2025).

record for up to $1,000."[15]

57.     Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

58.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase Private Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

59.     According to an article in the HIPAA Journal posted on October 14, 2022, cybercriminals hack into medical practices for their "highly prized" medical records. "[T]he number of data breaches reported by HIPAA-regulated entities continues to increase every year. 2021 saw 714 data breaches of 500 or more records reported to the [HHS' Office for Civil Rights] OCR – an 11% increase from the previous year. Almost three-quarters of those breaches were classified as hacking/IT incidents."[16]

60.     Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[17]

61.     The HIPAA Journal article goes on to explain that patient records, like those stolen

---

[15] https://www.ahu.edu/blog/data-security-in-healthcare (last visited December 1, 2025).
[16] https://www.hipaajournal.com/why-do-criminals-target-medical-records/ (last visited December 1, 2025).
[17] *Id.*

from VITAS, are "often processed and packaged with other illegally obtained data to create full record sets (the previously mentioned Fullz package) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other criminals and "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[18]

62.    Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully can ward off a potential attack.

63.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[19]

64.    These significant increases in attacks to companies, particularly those in the healthcare industry, and attendant risk of future attacks, is widely known to the public and to anyone in that industry, including Defendant VITAS.

65.    A study by Experian found that the average total cost of medical identity theft is "nearly $13,500" per incident, and that many victims were forced to pay out-of-pocket costs for fraudulent medical care.[20] Victims of healthcare data breaches often find themselves "being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores."[21]

66.    Moreover, there may be a time lag between when harm occurs versus when it is

---

[18] *Id.*
[19] https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited December 1, 2025).
[20]https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited December 1, 2025).
[21]*Id.*

discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

67.     It is incorrect to assume that reimbursing a victim for a financial loss due to fraud makes that individual whole again. Similar to the GAO's study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, about a third (32%) spent a month or more resolving problems."[22] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims."[23]

68.     Further, once a patient's medical information is in the hands of thieves, they have access to the individual's health insurance and may use it to obtain free medical care, which can "ruin credit and take months, or even years, to resolve."[24]

69.     As the fraudulent activity resulting from the Data Breach may not come to light for years, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

---

[22] https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last visited December 1, 2025).
[23] *Id.*
[24] https://www.naham.org/page/ConnectionsThe-Value-of-Personal-Medical-Information#:~:text=Personal%20medical%20data%20is%20said,telephone%20numbers%20and%20medical%20conditions (last visited December 1, 2025).

70.     VITAS's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

71.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[25]

72.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[26]

73.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in VITAS's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

74.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

75.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices

---

[25] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[26] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

businesses must use.[27]   The FTC declared that, *inter alia*, businesses must:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

76.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

77.    Furthermore, the FTC explains that companies must:

    a.    not maintain information longer than is needed to authorize a transaction;

    b.    limit access to sensitive data;

    c.    require complex passwords to be used on networks;

    d.    use industry-tested methods for security;

    e.    monitor for suspicious activity on the network; and

    f.    verify that third-party service providers use reasonable security measures.

78.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[27] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

79. In short, VITAS's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former employees' and patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *Defendant Failed to Follow Industry Standards*

80. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

81. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

82. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

83. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, VITAS opened the door to the criminals—thereby

causing the Data Breach.

***Defendant Violated HIPAA***

84.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep employees' and patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[28]

85.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI and PHI is properly maintained.[29]

86.     The Data Breach itself resulted from a combination of inadequacies showing VITAS failed to comply with safeguards mandated by HIPAA. VITAS's security failures include, but are not limited to:

    a.     failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.     failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[28] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[29] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

c.      failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      failing to ensure compliance with HIPAA security standards by VITAS's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.      failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.      failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.      failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

87.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate VITAS failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach discovered by VITAS in October 2025, including all those individuals who received notice of the breach.

89.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which VITAS has a controlling interest, any VITAS officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

90.     Plaintiff reserves the right to amend the class definition.

91.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

92.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

93.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

94.     <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members.

95.    <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

96.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

97.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendant were negligent in maintaining, protecting, and securing Private Information;

d.    if Defendant breached contract promises to safeguard Plaintiff's and the Class's Private Information;

e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if Defendant's Breach Notice was reasonable;

20

g.      if the Data Breach caused Plaintiff's and the Class' injuries;

h.      what the proper damages measure is; and

i.      if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

98.     <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

99.     Plaintiff incorporates by reference paragraphs 1–98 as if fully set forth herein.

100.    Plaintiff and the Class entrusted their Private Information to VITAS on the premise and with the understanding that VITAS would safeguard their Private Information, use their PHI to provide services only, and/or not disclose their Private Information to unauthorized third parties.

101.    VITAS owed a duty of care to Plaintiff and Class members because it was foreseeable that VITAS's failure—to use adequate data security in accordance with industry

standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

102.    VITAS has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

103.    VITAS owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom VITAS knew or should have known would suffer injury-in-fact from VITAS's inadequate security practices. After all, VITAS actively sought and obtained Plaintiff and Class members' Private Information.

104.    VITAS owed—to Plaintiff and Class members—at least the following duties to:

   a.    exercise reasonable care in handling and using the Private Information in its care and custody;

   b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

   c.    promptly detect attempts at unauthorized access;

   d.    notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their Private Information.

105.    Thus, VITAS owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

106.    VITAS also had a duty to exercise appropriate clearinghouse practices to remove

22

Private Information it was no longer required to retain under applicable regulations.

107.   VITAS knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

108.   VITAS's duty to use reasonable security measures arose because of the special relationship that existed between VITAS and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted VITAS with their confidential Private Information, a necessary part of obtaining services from Defendant.

109.   Under the FTC Act, 15 U.S.C. § 45, VITAS had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class members' Private Information.

110.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of VITAS's duty to protect Plaintiff and the Class members' sensitive Private Information.

111.   VITAS violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. VITAS's conduct was particularly unreasonable given the nature and amount of Private Information VITAS had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

112.    Similarly, under HIPAA, VITAS had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class members' Private Information.

113.    VITAS violated its duty under HIPAA by failing to use reasonable measures to protect its Private Information and by not complying with applicable regulations detailed *supra*. Here too, VITAS's conduct was particularly unreasonable given the nature and amount of Private Information that VITAS collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

114.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that VITAS hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access VITAS's databases containing the Private Information —whether by malware or otherwise.

115.    Private Information is highly valuable, and VITAS knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

116.    VITAS improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

117.    VITAS breached these duties as evidenced by the Data Breach.

118.    VITAS acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' Private Information by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the Private Information was

stored, used, and exchanged, and those in its employ who were responsible for making that happen.

119.     VITAS breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

120.     VITAS further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

121.     VITAS has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

122.     As a direct and traceable result of VITAS's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

123.     And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

124.     VITAS's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by VITAS's

negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

125.    Plaintiff incorporates by reference paragraphs 1–98 as if fully set forth herein.

126.    Plaintiff and Class members were required to provide their Private Information and payment to VITAS as a condition of receiving services and/or employment provided by Defendant. Plaintiff and Class members provided their Private Information to VITAS in exchange for VITAS's services and/or employment.

127.    Plaintiff and Class members reasonably understood that a portion of the funds they generated from employment and/or paid to VITAS would be used to pay for adequate cybersecurity measures.

128.    Plaintiff and Class members reasonably understood that VITAS would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on VITAS's duties under state and federal law and its internal policies.

129.    Plaintiff and the Class members accepted VITAS's offers by disclosing their Private Information to VITAS in exchange for employment and/or services.

130.    In turn, and through internal policies, VITAS agreed to protect and not disclose the Private Information to unauthorized persons.

131.    In its Privacy Policy, VITAS represented that they had a legal duty to protect Plaintiff's and Class Member's Private Information.

132.    Implicit in the parties' agreement was that VITAS would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

133.    After all, Plaintiff and Class members would not have entrusted their Private Information to VITAS in the absence of such an agreement with Defendant.

134.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

135.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

136.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

137.    VITAS materially breached the contracts it entered with Plaintiff and Class members by:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c.    failing to comply with industry standards;

    d.    failing to comply with the legal obligations necessarily incorporated into

the agreements; and

e.      failing to ensure the confidentiality and integrity of the electronic Private

Information that VITAS created, received, maintained, and transmitted.

138.    In these and other ways, VITAS violated its duty of good faith and fair dealing.

139.    VITAS's material breaches were the direct and proximate cause of Plaintiff's and

Class members' injuries (as detailed *supra*).

140.    And, on information and belief, Plaintiff's Private Information has already been

published—or will be published imminently—by cybercriminals on the Dark Web.

141.    Plaintiff and Class members performed as required under the relevant agreements,

or such performance was waived by VITAS's conduct.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

142.    Plaintiff incorporates by reference paragraphs 1–98 as if fully set forth herein.

143.    This claim is pleaded in the alternative to the breach of implied contract claim.

144.    Plaintiff and Class members conferred a benefit upon Defendant. After all, VITAS

benefitted from using their Private Information to provide services/employment and benefitted

from the payment provided in exchange for services and/or employment.

145.    VITAS appreciated or had knowledge of the benefits it received from Plaintiff and

Class members.

146.    Plaintiff and Class members reasonably understood that VITAS would use

adequate cybersecurity measures to protect the Private Information that they were required to

provide based on VITAS's duties under state and federal law and its internal policies.

147.    VITAS enriched itself by saving the costs they reasonably should have expended

on data security measures to secure Plaintiff's and Class members' Private Information.

148.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, VITAS instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of VITAS's failure to provide the requisite security.

149.     Under principles of equity and good conscience, VITAS should not be permitted to retain the full value of Plaintiff's and Class members' payment because VITAS failed to adequately protect their Private Information.

150.     Plaintiff and Class members have no adequate remedy at law.

151.     VITAS should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

### FOURTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

152.     Plaintiff incorporates by reference paragraphs 1–98 as if fully set forth herein.

153.     Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

154.     Defendant owed a duty to its current and former patients and employees, including Plaintiff and the Class, to keep this information confidential.

155.     The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' Private Information is highly offensive to a reasonable person.

156.     The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

157.     The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

158.     Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

159.     Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

160.     Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

161.     As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

162.     And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

163.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since

their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

164.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

165.     In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

166.     Plaintiff incorporates by reference paragraphs 1–98 as if fully set forth herein.

167.     Given the relationship between VITAS and Plaintiff and Class members, where VITAS became guardian of Plaintiff's and Class members' Private Information, VITAS became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' Private Information; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) VITAS did and does store.

168.     VITAS has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of VITAS's relationship with them—especially to secure their Private Information.

169.    Because of the highly sensitive nature of the Private Information, Plaintiff and Class members would not have entrusted Defendant, or anyone in VITAS's position, to retain their Private Information had they known the reality of VITAS's inadequate data security practices.

170.    VITAS breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' Private Information.

171.    VITAS also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

172.    As a direct and proximate result of VITAS's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against VITAS and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining VITAS from further unfair and/or deceptive practices;

E.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be

        determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the

        evidence produced at trial; and

J.      Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


Date: December 2, 2025

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (FBN 121452)
Jonathan M. Streisfeld (FBN 117447)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com

Brittany Resch*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*